UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANJEEV BUDHA,<br><br>                    Petitioner,<br><br>          v.<br><br>RON MURRAY, Mesa Verde ICE<br>Processing Center Facility Administrator,<br>et al.,<br><br>                    Respondents. | Case No.  1:25-cv-01941-JLT-HBK (HC)<br><br>FINDINGS AND RECOMMENDATIONS TO<br>GRANT PETITION FOR WRIT OF HABEAS<br>CORPUS IN PART[1]<br><br>(Doc. 1)<br><br>FIVE-DAY OBJECTION PERIOD |

Petitioner Sanjeev Budha, an immigrant detainee in U.S. Immigration Customs and Enforcement ("ICE") custody at the Mesa Verde Processing Center in Bakersfield, California, initiated this action by filing a counseled petition for writ of habeas corpus under 28 U.S.C. § 2241, docketed on December 18, 2025.  (Doc. 1, "Petition").  On December 22, 2025, the assigned district judge referred this matter to the undersigned after denying Petitioner's Motion for a Temporary Restraining Order.  (Docs. 3, 7).

The Petition raises the following claims for relief: Petitioner's detention in ICE custody without a bond hearing violates his Fifth Amendment substantive and procedural due process

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2022).

rights; his re-arrest and detention is in violation of the Fourth Amendment; and his arrest and detention is in violation of the Administrative Procedure Act.  (*Id*. at 15-19).  As relief, *inter alia*, Petitioner asks the Court to issue a writ of habeas corpus requiring Respondents to immediately release him from custody.  (*Id*. at 19).

In response, Respondent argues the Court should deny the Petition because, (1) Petitioner has not established a violation of his due process rights because, as an "applicant for admission," he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and is therefore ineligible for a bond hearing;[2] (2) the Fourth Amendment does not provide Petitioner with a basis for habeas relief; and (3) "because a writ of habeas corpus provides Petitioner an adequate remedy to his detention challenge, suit under the APA is precluded."  (Doc. 11).  In reply, Petitioner argues that Respondents made no meaningful effort to address his due process claims, including the failure to address how Petitioner, who was previously released on bond under § 1226, could still be seen as "seeking entry" pursuant to § 1225(b)(2).  (Doc. 12 at 2).  Petitioner also highlights Respondents' acknowledgement that there are no factual or legal issues in this case that render it distinct from the cases cited in the Court's December 23, 2025 order directing response.  (*See* Doc. 8 (citing *Chavarria v. Chestnut*, 2025 WL 3533606, at *4 (E.D. Cal. Dec. 9, 2025) (finding petitioner demonstrated a likelihood of success on the merits of his procedural due process claim and ordering immediate release); *Bernal v. Albarran*, 2025 WL 3281422, at *6 (N.D. Cal. Nov. 25, 2025) (determining that petitioner's detention was not authorized under § 1225(b)(2)(A) or § 1226(a))); (Doc. 11 at 5).

Significant to the consideration of the Petition is Petitioner's status as a Nepalese citizen who was charged with removability soon after entering the country without inspection and placed in standard removal proceedings under § 1229a, detained pursuant to 8 U.S.C. § 1226, and later

---

[2] Respondent also "acknowledges" district court cases within the Ninth Circuit that have recently vacated or stayed the Department of Homeland Security's July 8, 2025 *Interim Guidance Regarding Detention Authority for Applications for Admission*, and an appeal regarding the application of § 1225(b)(2) that is currently pending before the Ninth Circuit.  (Doc. 11 at 5-6 (citing *Maldonado Bautista v. Noem*, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025); *Garro Pinchi v. Noem*, 2025 WL 3691938 (N.D. Cal. Dec. 19, 2025); *Rodriguez v. Bostock*, No. 25-6842 (9th Cir.)).  However, as noted in Petitioner's reply, Respondents "do not seem to point out the relevance of these cases at this stage in this proceeding," nor does the Petition assert any claims relying on these cases.  (Doc. 12 at 4).

released pursuant to § 1226 on a $12,000 bond.  The undersigned recommends the district court grant the Petition as to Claim Two (procedural due process) in part for the reasons set forth below.[3]

## I.   BACKGROUND

Petitioner is a native and citizen of Nepal who entered the United States without inspection on or around February 7, 2025, and was detained almost immediately thereafter.  (Doc 11-1 at 2-5, Exh. 2).  On March 3, 2025, U.S. Citizenship and Immigration Services ("USCIS") issued a Notice to Appear charging him as subject to removal pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) (alien entry without inspection) and 8 U.S.C. § 1182(a)(7)(i)(I) (alien not in possession of valid entry document). (*Id.*).  On the same date, Petitioner was issued a Notice of Custody Determination stating that Petitioner would be detained pursuant to INA § 236, codified in 8 U.S.C. § 1226.  (*Id.* at 6).  On March 26, 2025, an Immigration Judge ("IJ") granted Petitioner's request for a change in custody status pursuant to 8 C.F.R. § 1236.  (*Id.* at 13-14).  He was ordered released from custody under bond of $12,000 and enrolled in the Alternative to Detention ("ATD") program "at the discretion of DHS."  (*Id.*).  At some point, Petitioner filed an application for asylum, and that application remains pending.  (Doc. 1 at 13-14, ¶ 62).

On October 26, 2025, ICE officers arrested and re-detained Petitioner at his residence in Daly City, California for violations of the terms of his ATD program, specifically, for failing to check in via phone on March 29, 2025.  (Doc. 11-1 at 11).  Petitioner asserts that he requested a bond hearing, and the IJ found he did not have jurisdiction to hold a bond hearing pursuant to the Board of Immigration Appeals' ("BIA") decision in *Matter of Yajure Hurtado*, 29 I.&N. Dec. 216 (BIA 2025).  (Doc. 1 at 14, ¶ 65).

At the time the Petition was filed, Petitioner remains detained in ICE custody at the Mesa Verde Processing Facility in Bakersfield, California.  (*Id.*, ¶ 70).  His next Master Calendar hearing date is currently scheduled for March 11, 2026.  (*Id.*, ¶ 71).  Before he was re-detained,

---

[3] In light of the Court's conclusion that Petitioner's re-detention was in violation of his procedural due process rights under the Fifth Amendment, and recommendation that Petitioner be granted a prompt post-deprivation hearing pursuant to § 1226(a), the Court declines to address Petitioner's additional substantive due process and statutory claims for relief.

Petitioner claims he never violated the terms or conditions of his release from custody, appeared for all required court hearings and meetings with ICE, and has no criminal history. (*Id.*, ¶¶ 59-60, 73).

## II.    APPLICABLE LAW AND ANALYSIS

### A.  Jurisdiction

A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). As pertinent here, "district courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)); *see also Jennings v. Rodriguez*, 538 U.S. 281, 294 (2018).

### B.  Statutory and Legal Framework

As background, the Court will briefly outline the statutory framework of detention authority under the INA, and the recent shift in long-standing practice by Executive agencies in interpreting these statues.

#### 1.  Mandatory Detention under 8 U.S.C. § 1225(b)

Title 8 U.S.C. § 1225, titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing," states that an "alien present in the United States who has not been admitted or arrives in the United States … shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). "Applicants for admission must 'be inspected by immigration officers' to ensure that they may be admitted into the country consistent with U.S. immigration law." *Jennings*, 583 U.S. at 287 (quoting § 1225(a)(3)). Pursuant to § 1225(b)(1), if an immigration officer determines that an arriving alien is inadmissible, and the alien does not indicate an intention to apply for asylum or a fear of persecution, "the officer [must] order the alien removed from the United States without further hearing or review." § 1225(b)(1)(A)(i); 8 U.S.C. § 1182(a)(7). As relevant here, pursuant to § 1225(b)(2)(A), subject to certain exceptions, "in the case of an alien who is an applicant for admission, if the examining officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be

4

admitted, the alien *shall* be detained for a proceeding under 1229a of this title." § 1225(b)(2)(A) (emphasis added). "Applicants for admission" may be temporarily released on parole only "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A) and citing 8 C.F.R §§ 212.5(b), 235.3 (2017)). As explained by the Supreme Court in *Jennings v. Rodriguez*,

> [r]ead most naturally, §§ 1225(b)(1) and (b)(2) … mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) aliens are detained for "further consideration of the application for asylum," and § 1225(b)(2) aliens are in turn detained for "[removal] proceeding[s]." Once those proceedings end, detention under § 1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.

583 U.S. at 297.

### 2. Discretionary Detention under 8 U.S.C. § 1226(a)[4]

Title 8 U.S.C. § 1226, titled "Apprehension and detention of aliens," instructs that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Pursuant to § 1226(a) the government has broad discretion whether to continue to detain the arrested alien or release the alien on (A) bond of at least $1,500 … or (B) conditional parole. § 1226(a); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)) (noting an ICE officer makes the initial custody determination when a person is apprehended under § 1226(a) and may release the alien if he or she "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."). Section 1226 also provides that "a detainee may request a bond hearing before an IJ at any time before a removal order becomes final," and may request an additional

---

[4] Section 1226(c) "carves out a statutory category of aliens who may *not* be released under § 1226(a)," mandating detention for an alien apprehended under § 1226 "who falls into one of several enumerated categories involving criminal offenses." *Jennings*, 583 U.S. at 289 (emphasis in original). In January 2025, the Laken Riley Act ("LRA") amended § 1226(c) to add a new category of alien ineligible for release under § 1226(a), including aliens deemed "inadmissible" for being "present in the United States without being admitted or paroled," who have been arrested for, charged with, or convicted of certain crimes. LRA, Pub. L. No. 119-1 (Jan. 29, 2025); *see* 8 U.S.C. § 1182(a)(6)(A)(i), § 1226(c)(1)(E).

5

bond hearing if he or she can demonstrate a material change in circumstances. *Id*. at 1197 (citing 8 C.F.R. § 236.1(d)(1), 1003.19(e)).

"Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)). To obtain release, the detainee must demonstrate by the preponderance of the evidence that he or she is "not a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Matter of Guerra*, 24 I.& N. Dec. 37, 40 (B.I.A. 2006); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007). After discretionary release under § 1226(a), the government retains authority "at any time" to revoke bond or conditional parole, rearrest the alien *under the original warrant*, and detain the alien. § 1226(b). However, "if an immigration judge has determined the noncitizen should be released, the DHS may not re-arrest that noncitizen absent a change in circumstance. Where the release decision was made by a DHS officer, not an immigration judge, the Government's practice has been to require a showing of changed circumstance before re-arrest." *M.R.R. v. Chestnut*, 2025 WL 3265446, at *3 (E.D. Cal. Nov. 24, 2025) (internal citations omitted); *Martinez Hernandez v. Andrews*, 2025 WL 2495756, at *10 (E.D. Cal. Aug. 28, 2025) (noting that while statute allows for rearrest at any time, "this does not mean that DHS may exercise its discretion in a manner that is inconsistent with constitutional requirements.").

Relevant here is DHS's "Alternatives to Detention" (ATD) program, designed "to provide supervised release and enhanced monitoring for a subset of foreign nationals subject to removal whom ICE has released into the United States." *Audrey Singer*, Cong. Research Serv., R45804, Immigration: Alternatives to Detention (ATD) Programs 14 (July 8, 2019), https://sgp.fas.org/crs/homesec/R45804.pdf. "These aliens are not statutorily mandated to be in DHS custody, are not considered threats to public safety or national security, and have been released either on bond, their own recognizance, or parole pending a decision on whether they should be removed from the United States." *Id*.

////

////

6

### 3. Government's Change in Position

"Until this year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation." *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *3 (N.D. Cal. Sept. 12, 2025); *see also, e.g., Escobar Salgado v. Mattos*, 2025 WL 3205356, at *3 (D. Nev. Nov. 17, 2025) (citing *Inspection and Expedited Removal of Aliens*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Until the government adopted its new interpretation of § 1225(b)(2) this year, the longstanding (almost three decades) practice of the agencies charged with interpreting and enforcing the INA without inspection and were apprehended while present in the U.S.  By contrast, those apprehended at or near a port of entry were designated as 'arriving aliens.'); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1244 (W.D. Wash. 2025) ("The longstanding practice of the Executive branch agencies charged with interpreting and enforcing the INA considered noncitizens like [petitioner] who had entered without inspection, and were apprehended while residing in the United States, as subject to Section 1226(a).").  However, in July 2025, the Department of Homeland Security ("DHS"), in conjunction with the Department of Justice ("DOJ") adopted the legal position that § 1225, instead of § 1226, is the applicable immigration authority for an "applicant for admission" including an alien present in the United States "who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival," and all applicants for admission are subject to mandatory detention under § 1225(b). The Notice further provides "[t]hese aliens are also ineligible for a custody redetermination hearing ('bond hearing') before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS.  For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated." *See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, American Immigration Lawyers Association (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited January 7, 2026).  As noted above, in September 2025, the BIA issued a precedential decision adopting this interpretation of the government's detention authority under the INA and holding that IJ's do not

have authority to hear bond requests or grant bond to aliens "who are present in the United States without admission," because they are applicants for admission and subject to mandatory detention under § 1225(b)(2)(A).  *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 at *9.

### C.  Due Process

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law."  Further, it is "well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Trump v. J.G.G.*, 604 U.S. 670 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 305 (1993)*; Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001). However, the Supreme Court has simultaneously acknowledged that "the nature of protection [under the Due Process clause] may vary depending on [immigration] status and circumstance." *Zadvydas*, 522 U.S. at 693 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.").  As relevant here, "once an alien enters the country, the legal circumstances change, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary or permanent." *Id.*; *see also Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality. In the latter instance, the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'").  The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

### D.  Claim Two: Procedural Due Process Violation

Petitioner claims his continued detention without a pre-deprivation hearing violates his procedural due process rights under the Fifth Amendment.  (Doc. 1 at 16-17).  Respondents do not meaningfully address Petitioner's due process arguments; rather, their sole argument in response is that Petitioner has not "met his burden" of establishing a violation of due process rights because, as "an applicant for admission," he is subject to the mandatory detention under §

8

1225(b) and is thus "ineligible" for a bond hearing.  (Doc. 11 at 3-4).  Given the relevance of this dispute to the due process analysis, as a threshold matter the Court joins with the overwhelming majority of courts across the country in rejecting Respondents' argument that noncitizens who were previously released on conditional parole and later re-detained are "applicants for admission" subject to mandatory detention under § 1225(b)(2)(A); rather, the detention of those noncitizens, like Petitioner, continues to be governed by § 1226(a) during removal proceedings. *See, e.g., Montero-Alvarez v. Alberran*, 2025 WL 3754116, at *4 (E.D. Cal. Dec. 29, 2025) (collecting cases); *Sharan S. v. Chestnut*, 2025 WL 3167826, at *5 (E.D. Cal. Nov. 12, 2025) ("Respondents' argument that section 1225(b)(2)(A) applies to all noncitizens present in the United States without admission is unpersuasive. Respondents' proposed interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice."); *C.A.R.V. v. Wofford*, 2025 WL 3059549, at *8 (E.D. Cal. Nov. 3, 2025) ("The government's recent interpretation of the relationship between § 1225 and § 1226 is unfounded and detention is therefore not 'mandatory' in this case, where petitioner has been present in the United States for approximately four years and was released on his own recognizance well before Respondents adopted the new interpretation of the governing statutes."); *Barco Mercado v. Francis*, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) ("By a recent count, the central issue in this case – the administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed – has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.  Thus, the overwhelming, lopsided majority have held that the law still means what it always has meant.") (collecting cases); *But see, e.g., Alonzo v. Noem*, 2025 WL 3208284, at *5 (E.D. Cal. Nov. 17, 2025) (denying motion for temporary restraining order because petitioner failed to establish he was likely to succeed on the merits of his statutory claim, but also noting the finding "should not

9

be understood an affirmative endorsement of the view that respondents' interpretation of § 1225(b)(2)(A) – which is in line with the expansive understanding of mandatory detention applicability – is correct."); *Ramos v. Lyons*, 2025 WL 3199872 (C.D. Cal. Nov. 12, 2025).

Here, Petitioner alleges he has a "strong liberty interest in not being re-incarcerated after prior release." (Doc. 1 at 16). The Court agrees. Procedural due process claims are analyzed in two steps. *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). First, the Court examines whether a protected liberty interest exists. *Garcia v. Andrews*, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025 (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)). Respondents do not contest that Petitioner was apprehended soon after entering the country and subsequently released on bond. (*See* Doc. 11-1). As explained *supra*, to obtain release on bond a detainee must demonstrate by the preponderance of the evidence that he or she is "not a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Matter of Guerra*, 24 I.& N. Dec. 37, 40 (B.I.A. 2006); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007). Thus, a prior decision to release noncitizens on bond or parole while their removal proceedings are pending "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom*, *Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018); *see also Doe v. Becerra*, 2025 WL 691664, at *5 (E.D. Cal. Mar. 3, 2025) (noncitizen previously released on bond had a due process interest in his continued liberty) (collecting cases).

Where, as here, "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody [he or] she has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032-33 (N.D. Cal. 2025) ("[e]ven when the government has discretion to detain an individual, its subsequent decision to release the individual creates 'an implicit promise' that [he or] she will be re-detained only if [he or] she violates the conditions of her release.") (collecting cases). Petitioner was released from custody on bond pending a final removal decision, and in that time has appeared at immigration appointments when requested, fully complied with requirements to

10

apply for asylum protection, and complied with the laws of the United States.  (Doc. 1 at 13-14).

Thus, the Court finds Petitioner's release and time spent out of custody gives rise to a protected

liberty interest in continued release following release on bond.  *See Solano v. Robbins*, 2025 WL

3718831, at *6 (E.D. Cal. Dec. 23, 2025) ("Relying on *Morrissey*, courts in this district have

consistently held that noncitizens who have been released from immigration custody pending

civil removal proceedings have a protected interest in remaining out of immigration custody.")

(collecting cases).

Finding that due process applies, the question before the Court is, what process is due?

"The constitution typically requires some kind of hearing before the State deprives a person of

liberty or property.  This is particularly true when the interest is in liberty, the loss of which

cannot fully be compensated after the fact."  *Salcedo Aceros*, 2025 WL 2637503, at *5 (internal

quotations and citations omitted).  To determine whether constitutionally sufficient procedures to

protect a liberty interest of a previously released and then re-detained noncitizen, courts apply the

three factor balancing test outlined in *Mathews v. Eldridge*:[5] (1) the private interest that will be

affected by the official action, (2) the risk of erroneous deprivation of such interest through the

procedures used, and the probable value, if any, of additional procedural safeguards, and (3) the

government's interest, including the function involved, as well as the fiscal and administrative

burdens that the procedural requirement would entail.  424 U.S. 319, 335 (1976).

First, the Court considers "the private interest that will be affected by the official action."

*Id*.  Petitioner has a substantial private interest in remaining free from detention.  *See Zadvydas*,

533 U.S. at 690 ("Freedom from imprisonment – from government custody, detention, or other

forms of physical restraint – lies at the heart of the liberty [the Due Process] Clause protects.");

*Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (recognizing it is "beyond dispute" that

---

[5] The Ninth Circuit has noted that the Supreme Court "when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*."  *Rodriguez Diaz*, 53 F.4th at 1206-07.  However, in light of the consistent employment of *Mathews* by district courts in the Ninth Circuit in determining whether due process applies in the context of re-detention of previously paroled noncitizens, the Court proceeds to apply those factors while still reserving judgment on whether *Mathews* is an "all embracing test" when encountering due process challenges by immigrant detainees. *See A.E. v. Andrews*, 2025 WL 1424382, at *4 (citing *Dusenbury v. United States*, 534 U.S. 161, 168 (2002) ("we have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims.").

the "private interest at issue here is 'fundamental': freedom from imprisonment is the 'core of the liberty protected by the Due Process Clause.'").  Moreover, the IJ already found that Petitioner does not pose a danger, that flight risk is mitigated by a $12,000 bond, and that Petitioner should be released.  (*See* Doc. 11-1 at 13).  Thus, Petitioner's private interest is heavily affected, and this factor weighs in favor of Petitioner.

Second, the Court considers "the risk of an erroneous deprivation of such an interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335.  Petitioner received no form of pre-deprivation custody redetermination hearing.  Thus, the risk of erroneous deprivation is considerable.  *See A.E. v. Andrews*, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation of [a petitioner's] interest is high where [h]e has not received any bond or custody redetermination hearing.") (internal quotations omitted).  Civil immigration detention is assumed to be "nonpunitive in purpose and effect," and is therefore justified when a noncitizen presents a risk of flight or danger to the community.  *See Zadvydas*, 533 U.S. at 690.  Here, Petitioner was released subject to certain reporting conditions under the ATD program.  (Doc. No. 11-1 at 13).  "In general, release reflects a determination by the government that the noncitizen is not a danger to the community of a flight risk." *Saravia*, 280 F. Supp. 3d at 1176.

There is evidence in the supporting documents submitted by Respondent that Petitioner was arrested and detained by ICE for violating the terms of his ATD program, including failing to check in via telephone on March 29, 2025.  (Doc. 11-1 at 11).  Notably, Respondents make no argument that Petitioner presents a flight risk or danger, and Petitioner claims he has never violated the terms or conditions of his release from custody, and has appeared for all required court hearings and meetings with ICE.  (Doc. 1 at 13).  Regardless, given the absence of determination by a neutral arbitrator as to whether Petitioner is currently a flight risk or danger to the community, both the risk of erroneous deprivation of Petitioner's interest, and the probable value of additional safeguards, is high.  *See A.E.*, 2025 WL 1424382, at *5.

Third, the Court considers the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements

would entail." *Mathews*, 424 U.S. at 334.  Unquestionably, the government has a significant national interest in enforcing its immigration laws.  Indeed, it is a sovereign's fundamental right to control its borders, to protect national security, and ensure integrity in its immigration system.  However, Respondents fail to explain how Petitioner threatens these interests or how the government's interest is weakened by affording him a hearing before a neutral decisionmaker.  Nor does Respondents offer evidence of how affording a hearing results in either a fiscal or administrative burden, which has been found to be "minimal" by other courts.  *See J.A.E.M. v. Wofford*, 2025 WL 3013377, at \*7 (E.D. Cal. Oct. 27, 2025) (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("In immigration court, custody hearings are routine and impose a 'minimal' cost.").  Because Respondents did not provide Petitioner with notice or reasons prior to his re-detention, and have seemingly offered no reasoning in any proceedings, including this one before this Court, as to why that decision was made, the Court finds Respondents have failed to demonstrate a significant interest in Petitioner's detention.  *See Noori v. LaRose*, 2025 WL 2800149, at \*11 (S.D. Cal. Oct. 1, 2025).  As recently explained by a court in this district,

> the government's asserted interest is hinged on mere speculation about Petitioner's risk of flight or dangerousness. [Petitioners] seek a bond hearing, not unqualified release.  Providing a bond hearing would not undercut the government's asserted interest in effecting removal.  Indeed, the purpose of a bond hearing is to inquire whether the alien represents a flight risk or danger to the community.  Given 'the minimal cost of conducting a bond hearing, and the ability of the IJ to adjudicate the ultimate legal issue as to whether Petitioner's continued detention is justified,' courts have concluded that 'the government's interest is not as weighty as Petitioner's.

 *A.E. V. Andrews*, 2025 WL 1424382, at \*5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).  This Court joins in this analysis and finds Petitioner's interest outweighs the government's interest in this instance.

Based on the foregoing, the Court finds the *Mathews* factors weigh in favor of the Petitioner, and his re-detention without hearing was a violation of his procedural due process rights.

////

**E.  Conclusion and Remedy**

As a final matter, the Court now considers whether a pre-deprivation or post-deprivation bond hearing is appropriate for Petitioner in this case.  As previously reasoned by the assigned district judge,

> The Supreme Court has held that "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *See Zinermon v. Burch*, 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (emphasis in original). However, the Court also recognized that there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. *Id.* at 128, 110 S.Ct. 975 (noting there may be "special case[s]" where a pre-deprivation hearing is impracticable); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 791 F.Supp.3d 1021, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025) ("absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ"). The rapidly developing caselaw on this subject gives limited guidance as to where this line should be drawn. Some courts that have addressed detention-related habeas petitions brought by persons released with enhanced supervision conditions have required pre-deprivation process, but in somewhat different circumstances. In *E.A.T.-B. v. Wamsley*, No. C25-1192-KKE, 795 F.Supp.3d 1316, 2025 WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025), the district court ordered the release of a petitioner arrested by ICE immediately after appearing in immigration court. That court agreed with the petitioner that ICE's post hoc explanation that violations warranted her detention was pretextual, given that ICE first became aware of petitioner's alleged violations a few hours before her immigration hearing, DHS did not raise those violations at the hearing or argue the petitioner should be detained for any reason, and the petitioner was then provided multiple, inconsistent justifications for her arrest. *Id*. In *Arzate v. Andrews*, No. 1:25-CV-00942-KES-SKO (HC), 2025 WL 2230521, at *7 (E.D. Cal. Aug. 4, 2025), converted to preliminary injunction sub nom, 2025 WL 2411010, at *1 (E.D. Cal. Aug. 20, 2025), the court ordered immediate release of in immigration detainee who had been in compliance with his conditions of release, even though he had incurred a misdemeanor arrest while on parole, in part because no charges were ever filed.
>
> **\*12** In contrast, this Court ordered a bond hearing in *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025), where the petitioner's records indicated numerous violations. Though Martinez Hernandez offered explanations for the violations and there was a dispute of fact as to whether the violations occurred, ICE's reliance upon those violations was "not obviously pretexual." *Id*. at * 12 ("If Respondent's view of the facts is correct, it is at least arguable that providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated her flight."). As this Court noted in *Martinez Hernandez*:

14

> In similar circumstances, courts have refused to release the petitioners but have ordered timely bond hearings. Carballo v. Andrews, No. 1:25-CV-00978-KES-EPG (HC), 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025), citing Perera v. Jennings, et. al, No. 21-CV-04136-BLF, 2021 WL 2400981, at *5 (N.D. Cal. June 11, 2021); Pham v. Becerra, No. 23-CV-01288-CRB, 2023 WL 2744397, at *6 (N.D. Cal. Mar. 31, 2023). "[A]llowing a neutral arbiter to review the facts would significantly reduce the risk of erroneous deprivation." Guillermo M. R. v. Kaiser, No. 25-CV-05436-RFL, 791 F.Supp.3d 1021, 2025 WL 1983677, at *8 (N.D. Cal. July 17, 2025). Thus, the Court concludes that prompt, post-deprivation process is required here.

*M.R.R.*, 2025 WL 3265446, at *11-12.

Here, Petitioner claims he has never violated the terms or conditions of his release from custody, has appeared for all required immigration court hearings and meetings with ICE, and has never tampered with or sought to unlawfully remove the GPS tracking unit ICE required him to wear. (Doc. 1 at 13). However, the report generated at the time of his re-detention expressly relied on a violation of the terms of his ATD program, including failing to report by checking in via telephone on March 29, 2025. (Doc. 11-1 at 11). In reply, Petitioner argues that courts "have looked with skepticism upon allegations of remote or technical violations that have no bearing on the issue of flight risk or danger." (Doc. 12 at 4). However, based on the reasoning outlined above, the undersigned recommends the Court order Respondents to provide Petitioner with a prompt, post-deprivation hearing pursuant to § 1226(a). *See M.R.R.*, 2025 WL 3265446, at *11-12.

Finally, "consistent with the numerous decisions of other courts in this circuit who have ruled on this issue, at such a hearing the burden [will] be on the government to prove that Petitioner is a flight risk or danger to the community by clear and convincing evidence." *Yosseline P.G. v. Noem*, 2026 WL 183732, at *5 (E.D. Cal. Jan. 23, 2026) (collecting cases); *J.E.H.G. v. Chestnut*, 2025 WL 3523108, at *14 (E.D. Cal. Dec. 9, 2025) (noting "the immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention.")

15

Accordingly, it is hereby **RECOMMENDED:**

1. The Petition for Writ of Habeas Corpus (Doc. 1) be **GRANTED in part** as follows:

   a. Respondents be directed to provide Petitioner with a substantive bond hearing pursuant to § 1226(a), at which the Immigration Judge will determine whether Petitioner poses a risk of flight or a danger to the community if released.

   b. At such a hearing, the government be directed that they SHALL bear the burden of establishing, by clear and convincing evidence, that the Petitioner poses a danger to the community or flight risk

2. If released, Respondents be PERMANENTLY ENJOINED AND RESTRAINED from rearresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice of at least seven days before a pre-deprivation hearing at which the government will bear the burden of demonstrating by clear and convincing evidence that they are likely to flee or pose a danger to society if not arrested.

3. The bond requirement of Federal Rule of Civil Procedure 65(c) be waived. Courts regularly waive security in these cases. *See, e.g., Lepe v. Andrews*, 2025 WL 2716910, at *10 (E.D. Cal. Sept. 23, 2025).

4. This case be CLOSED.

### NOTICE OF EXPEDITED OBJECTIONS

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Given the recommendation to grant the petition in part, a party may file written objections with the Court within five (5) days of service of these Findings and Recommendations.** *Id*.; Local Rule 304(b) (permitting court to set a different time). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen (15) pages**. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with

specificity.  Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).  A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).


Dated:    February 2, 2026

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

17